UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GREGORY BROWN, § | | |
| Plaintiff § | | |
| v. § | CIVIL ACTION | |
| § | | |
| TEXAS DEPARTMENT OF § | NO.  1:12-cv-372 | |
| CRIMINAL JUSTICE, § | | |
| Defendant. § | | |

## ORIGINAL COMPLAINT

Plaintiff Gregory Brown respectfully brings this complaint against Defendant Texas Department of Criminal Justice (TDCJ) for failing to integrate individuals with disabilities into its programming, and failing to provide full access to its facilities, as required by federal law.

STATEMENT OF CLAIMS

1. Mr. Brown, a person with a physical disability requiring the use of a wheelchair for mobility, is presently incarcerated at TDCJ's Hightower Unit, where TDCJ denies him accessible facilities equipped for people using wheelchairs, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§12131-12134 (ADA) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Rehabilitation Act").  Accordingly, Plaintiff brings this lawsuit seeking compensatory damages, attorneys' fees, costs, as well as injunctive and declaratory relief from illegal barriers that prevent access throughout the Hightower Unit to persons with mobility disabilities.

JURISDICTION AND VENUE

2.  This court has jurisdiction over Plaintiff's federal question claims pursuant to the Rehabilitation Act, the Americans With Disabilities Act, and 28 U.S.C. §1331.

3.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) as the events giving rise to Mr. Brown's claims occurred in Liberty County, Texas.

PARTIES

4. Gregory Brown uses a wheelchair for mobility after an accident shattered his leg. Reconstructive surgery resulted in his right leg being six inches shorter than his left. Mr. Brown is an "otherwise qualified handicapped individual" under the Rehabilitation Act and a "qualified individual with a disability" within the meaning of Title II of the ADA.

5. The Texas Department of Criminal Justice is the state prison system, an agency of the State of Texas. At all relevant times, it operated the Hightower Unit prison, a public facility with programs and services Mr. Brown was otherwise qualified for. TDCJ is a public entity within the meaning of Title II of the ADA, and is a recipient of federal funds covered by the mandate of the Rehabilitation Act. TDCJ is sued for declaratory, compensatory, and nominal relief. It can be served with process by serving Brad Livingston, its executive director, at 209 W. 14th Street, Austin, Texas 78701. *Service is requested*.

6. Defendant is responsible, under federal law, for providing and maintaining accessibility to facilities and services at the Hightower Unit and for ensuring those facilities comply with the Americans with Disabilities Act Architectural Guidelines (ADAAG[1]), promulgated under the ADA.

STATEMENT OF FACTS

7. Because of his disability, Mr. Brown requires a wheelchair for mobility purposes. Therefore, certain accommodations, such as level sidewalks, an accessible recreational track, grab bars in the bathroom, and an accessible fire escape that meet the prescriptions outlined by the ADAAG are necessary to allow him access through the areas of the Hightower Unit he is qualified to use.

---

[1] The ADA Accessibility Guidelines (ADAAG) are found at 28 C.F.R. Pt.36, App.A.

8. TDCJ's failure to provide an accessible facility makes it physically difficult, if not impossible, for Mr. Brown to participate in educational, recreational and other constitutionally required programs at the prison without injury.

9. The Hightower Unit is a vast complex of separate buildings. Mr. Brown attends programs and activities in several of these buildings, including classes he is required to attend in Seven Building, meals in the dining hall, and physical activity in the recreation yard. He travels, using his wheelchair, from the barracks-style dormitory he lives in to these other buildings.

10. The uneven sidewalks that pervade the paved pathways of the Hightower Unit make the simple act of moving from one building to the next a painstaking struggle for Mr. Brown. When traversing his daily route from his dorm to the dining hall for meals, and Seven Building for his required classes, Mr. Brown routinely encounters jagged sidewalks with dangerous potholes. The vibrations from his chair trying to wheel over these holes and cracks have resulted in numerous instances of Mr. Brown's tibia popping out of place, causing him intense physical pain and injury.

11. In addition to the cracks, the sidewalks at the Hightower Unit are elevated and are surrounded by steep ditches. The sidewalks lack hand rails, however, increasing the likelihood that a person using a wheelchair, such as Mr. Brown, could slip off the sidewalk and into the surrounding ditches, especially on rainy days.

12. Upon arrival at Seven Building, where he attends class every day, Mr. Brown is faced with an inaccessible sink in the restroom. Although a work request was submitted several months ago, the sink has yet to be lowered to an accessible height, as required by law, leaving Mr. Brown unable to wash his hands, a service available to able-bodied people. Hand washing after using the restroom is especially important in an environment, such as a prison, where infectious diseases spread rapidly.

13. Another obstacle Mr. Brown encounters on a daily basis is the inaccessibility of the Hightower Unit's recreation facilities. The U.S. Constitution requires prisoners be provided at least one hour of recreation each day for exercise in the open air. The two recreational activities provided by the prison are a walking track and a basketball court. But the walking track is made of dirt, rather than pavement, preventing its recreational use by people in wheelchairs. The only concrete available is the basketball court, which is consistently occupied by others, forcing Mr. Brown, and others in wheelchairs, to remain stuck on the sidewalk, segregated from the rest of the unit's general population. Sitting on the concrete sidewalk for recreation does not provide Mr. Brown the opportunity for large muscle exercise. In effect, for people using wheelchairs, it is a sidewalk to nowhere.

14. In addition to the lack of pavement, the outside restroom to be used during recreation time is inaccessible for people using wheelchairs due to the lack of grab bars and the height of the sink. As a required safety device, grab bars enable people in wheelchairs to transfer to the toilet seat and back to their wheelchair. Prisoners are required to have safe and accessible restroom facilities to maintain general hygiene, as required by the U.S. Constitution. Despite Mr. Brown's inability to access the outside restroom, officers refuse to let him back inside to use the alternative accessible restroom, denying his request for a reasonable accommodation.

15. Mr. Brown is also faced with accessibility barriers several times a day at the dining hall. Due to a protruding tray slide in the food service line, he, and others who must remain seated in wheelchairs, cannot reach over this unnecessary barrier to receive their food from the cafeteria workers, thus frustrating Mr. Brown's constitutional right to an adequate diet.

16. Furthermore, the tables in the day room in Mr. Brown's dorm are inaccessible because the chairs are bolted to the ground, leaving no open space for his wheelchair to access

the table so he can interact with able-bodied prisoners. There is no penological purpose for irrationally segregating prisoners who use wheelchairs, in violation of the U.S. Constitution.

17. Finally, the emergency exit door for Mr. Brown's dorm is immediately followed by a step, rather than a ramp, providing no accessible route for Mr. Brown to leave the dorm in case of emergency.

18. Eliminating these architectural barriers would not fundamentally alter TDCJ's programs and services or pose an undue financial burden.

## CAUSES OF ACTION

### I. Violations of Title II of the ADA

19. Among its stated purposes, the ADA has a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. § 2101(a)(1)-(2).

20. Title II of the ADA, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. 42 U.S.C. § 12131-12134; 28 C.F.R. Part 35 §35.101 *et seq*.

21. Title II of the ADA applies to inmates in state prisons. *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206 (1998).

22. ADA Title II provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any [public] entity." 42 U.S.C. §12132.

23. Under Title II, the programs and activities of public entities *must* be accessible to people with disabilities unless that would cause a "fundamental alteration" to the program or activity or constitute an "undue financial burden" to the entity. 28 C.F.R. §35.149-150.

24. In addition, the ADAAG establishes the standards to which public accommodations must conform in order to comply with the ADA. The ADAAG applies to the Hightower Unit since removal of the barriers described herein is readily achievable within the meaning of the ADA. 42 U.S.C. § 12182(b)(2)(A)(iv).

25. TDCJ violates the following sections of the ADAAG as a result of the barriers and deficiencies described above:

    a. Section 302.1, with respect to the sidewalks and the recreational track:

        1. Section 302.1 states, "Floor and ground surfaces shall be stable, firm, and slip resistant."

        2. The Advisory 302.1 section defines a "stable surface" as one that remains unchanged by contaminants or applied force, so that when the contaminant or force is removed, the surface returns to its original condition. A firm surface resists deformation by either indentations or particles moving on its surface. A slip-resistant surface provides sufficient frictional counterforce to the forces exerted in walking to permit safe ambulation.

        3. The cracks and uneven cobblestone of the sidewalks at the Hightower Unit are neither stable, nor a firm surface for wheelchairs to traverse.

        4. The dirt, gravel track at the Hightower Unit are neither stable, nor a firm surface, as it does not remain unchanged by applied force.

        5. Thus, TDCJ is in violation of Section 302.1.

    b. Section 606.3, with respect to the sink in Seven Building and the recreational bathroom:

        1. Section 606.3 states, "Sinks shall be installed with the front of the higher of the rim or counter surface 34 inches (865 mm) maximum above the finish floor or ground."

      2. Despite Mr. Brown's numerous requests for accommodation and Hightower's submission of a work request, the sink in the seven building bathroom remains out of reach at a height above the maximum 34 inches allowed.

      3. The outside restroom for recreation is also higher than the maximum 34 inches allowed.

      4. Thus, TDCJ is in violation of Section 606.

c. Section 604.5, with respect to the outside restroom for recreation:

      1. Section 604.5 states, "Grab bars shall be provided on the side wall closest and on the rear wall."

      2. The outside bathroom in the recreation yard does not have grab bars on neither the side wall nor the rear wall.

      3. Thus, TDCJ is in violation of Section 604.5.

d. Section 904.5.2, with respect to the food service line in the dining hall:

      1. Section 904.5.2 states, "The tops of tray slides shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground."

      2. The tray slide for the food service line in the chow building exceeds the 34 inches maximum.

      3. Thus, TDCJ is in violation of Section 904.5.2.

e. Section 306.3, with respect to the bolted benches in the day room:

      1. Section 306.3.3 states, "Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches (280 mm) deep minimum at 9 inches (230 mm) above the finish floor or ground, and 8 inches (205 mm) deep minimum at 27 inches (685 mm) above the finish floor or ground."

      2. The benches bolted to the ground under the tables in the day room eliminates space for required knee clearance, making the tables inaccessible for people using wheelchairs.

      3. Thus, TDCJ is in violation of Section 306.3.

f. Section 303.4, with respect to the step outside of the emergency exit door:

1. Section 303.4 states, "Changes in level greater than ½ inch (13 mm) high shall be ramped."

2. The step outside the emergency exit door in the dorm is immediately followed by a step that exceeds ½ inch and, therefore, should be ramped.

3. Thus, TDCJ is in violation of Section 303.4.

## II.     Violations of the Rehabilitation Act

26.     The Rehabilitation Act states "no otherwise qualified person with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be the subject to discrimination under any program of activity receiving Federal financial assistance."  29 U.S.C. §794(a) (2009).

27.     The Rehabilitation Act imposes an affirmative obligation upon public entities, like TDCJ, to make reasonable accommodations for individuals with disabilities.  29 U.S.C. §794(a).

28.     TDCJ's failure to remedy the aforementioned barriers to access at the Hightower Unit violates Mr. Brown's rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, in that such actions discriminate against him on the basis of his disability by denying him full participation in the use of the facilities, programs, privileges, and accommodations of TDCJ facilities.

29.     The mandates of the Rehabilitation Act and the ADA are the same.  "The remedies, procedures, and rights" available under the Rehabilitation Act "shall be the remedies procedures, and rights" available under Title II of the ADA.  42 U.S.C. §12133; *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) (construing the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act).  Thus, TDCJ's violations of the ADA also violate the Rehabilitation Act.

## RELIEF REQUESTED

### Damages

30. Mr. Brown seeks compensatory damages against TDCJ, which violated his right to be free from discrimination based on his disability, mental anguish, emotional distress, pain, and suffering caused by Defendant under the ADA and the Rehabilitation Act. 42 U.S.C. §794, 42 U.S.C. §12101. TDCJ's failure to provide an accessible facility resulted in multiple painful, physical injuries to his tibia.

### Injunctive Relief

31. Because Mr. Brown will continue to experience unlawful discrimination as a result of TDCJ's failure and refusal to comply with Title II of the ADA and the Rehabilitation Act, injunctive relief is necessary to order TDCJ to modify its facilities to allow Mr. Brown equal access to TDCJ facilities and programs.

32. Mr. Brown will suffer irreparable harm if injunctive relief is not granted. There is no adequate, measureable damages available to Mr. Brown for the deprivations of his statutory rights in this case, making injunctive relief necessary.

### Declaratory Judgment

33. Mr. Brown is entitled to a declaratory judgment concerning each of TDCJ's violations of Title II of the ADA and the Rehabilitation Act, specifying the rights of people with disabilities regarding TDCJ's facilities.

## ATTORNEYS' FEES AND COSTS

34. Mr. Brown is entitled to reasonable attorneys' fees, litigation expenses, and court costs, pursuant to the ADA, 42 U.S.C. §12133, and as allowed by Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a).

PRAYER FOR RELIEF

Therefore, Mr. Brown respectfully prays the Court:

A. Enter injunctive relief commanding TDCJ to modify its facilities so Mr. Brown may fully participate in TDCJ programs and activities, as described above;

B. Grant declaratory relief stating TDCJ has violated Mr. Brown's rights under Title II of the ADA and the Rehabilitation Act;

C. Grant reasonable attorneys' fees, litigation expenses and court costs; and,

D. Grant all other relief as appears reasonable and just, to which Mr. Brown may be entitled.

Dated: July 26, 2012.

Respectfully Submitted,

 /s/ Scott Medlock
Scott Medlock
Texas Bar No. 24044783
James C. Harrington
Texas Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741-3438
 (512) 474-5073 (telephone)
 (512) 474-0726 (fax)

ATTORNEYS FOR PLAINTIFF